**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0718-23

SCOTT MAYERS,

    Plaintiff-Respondent,

v.

DAVID MAYERS,

    Defendant-Appellant.

_____

Submitted March 5, 2025 – Decided June 17, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. DC-005500-23.

Almasy LaMountain, LLC, attorneys for appellant (Kimberley Almasy LaMountain, on the briefs).

Scott Mayers, respondent pro se.

PER CURIAM

Defendant David Mayers appeals from the trial court's September 25, 2023 order for judgment following a bench trial, finding in favor of plaintiff

Scott Mayers and awarding him $17,195.47 plus costs due to defendant erroneously transferring funds from plaintiff's account created pursuant to the Uniform Transfers to Minors Act (UTMA), N.J.S.A. 46:38A-1 to -57. The primary issue before us is whether defendant is entitled to reimbursement as custodian of plaintiff's UTMA account for purchases or payments made for plaintiff's benefit, or whether such purchases or payments were gifts and thus not subject to reimbursement.

We conclude the trial court did not err in finding the purchases or payments made by defendant were gifts rather than loans, and that defendant failed to present any evidence at trial to the contrary. We thus affirm the trial court's decision.

I.

Plaintiff is defendant's son. In 2012, defendant and plaintiff's mother set up two UTMA accounts, one for plaintiff, and another for plaintiff's younger brother Eric and designated defendant as custodian of the accounts. Between the years 2019 and 2021, defendant made certain purchases and payments for plaintiff including college payments, a down payment on a car, car repairs, and a computer. These expenditures purportedly totaled $24,686.35.

A-0718-23

Defendant and plaintiff's mother were divorced in May 2023. During the course of the divorce, plaintiff and defendant became estranged. On March 1, 2022—one day prior to plaintiff's twenty-first birthday—defendant withdrew all the funds in plaintiff's UTMA account, a total of $17,195.47, and transferred it into Eric's UTMA account. Plaintiff asserted defendant was not permitted to make such a transfer, and defendant maintained the transfer was reimbursement for the purchases and payments he previously made for plaintiff's benefit.

Plaintiff filed a complaint in June 2023, seeking return of the funds defendant withdrew from his UTMA account. Plaintiff claimed defendant, as custodian of plaintiff's UTMA account, "did not have unfettered discretion to use or deplete the funds," and the transfer of funds into Eric's account was not for plaintiff's benefit. Plaintiff contended defendant violated his fiduciary duty as custodian of plaintiff's UTMA account.

The parties proceeded to trial in September 2023. Plaintiff testified defendant, as custodian of plaintiff's UTMA account, did not have unrestricted authority to exhaust the funds in the account. Plaintiff also asserted the transfer of funds into Eric's UTMA account was not for the purpose of collecting, holding, or managing the investments of property on plaintiff's behalf, and thus defendant violated his fiduciary duty to plaintiff. Conversely, defendant

3

asserted he made all payments for plaintiff's benefit expecting to be reimbursed. Defendant produced receipts for certain payments, but only supported his assertion that the payments were a loan through his in-court testimony.

The trial court found it was "obvious . . . something [wa]s going on here other than the UTMA account," and a review of the evidence established defendant and plaintiff's mother went through a contentious divorce. The court determined that under the UTMA, the money placed into plaintiff's UTMA account was "irrevocable, which means no take backs. But [the UTMA] does give the custodian of funds the right to use the money in that account to pay the expenses for the minor."

The court recognized the payments for the car, college tuition, and computer were all documented, and that defendant was seeking reimbursement for these payments, yet in all the documentation, "[t]he one thing . . . missing . . . [wa]s any indication" that the payments were in "some way a loan. At any time . . . defendant could have withdrawn the money from [the UTMA] account and reimbursed himself . . . but there's no record of reimbursements . . . ." The court thus concluded defendant's payments "were gifts," and defendant was precluded from "turn[ing] around and . . . suddenly . . . recharacteriz[ing the payments] as loans just before" plaintiff turned twenty-one in an attempt to "take

4

it all back." Thus, the court found in favor of plaintiff and awarded him $17,195.47 plus costs.

## II.

On appeal, defendant contends there is no time limit on when a parent must seek reimbursement from a UTMA account for funds expended for the benefit of a child, and that the passage of time cannot convert a loan into a gift. He asserts because parties in divorce proceedings are normally instructed not to dissipate their assets under equitable distribution principles, "a lay person" like defendant cannot be expected to know that funds in a UTMA account are not subject to equitable distribution. He thus argues his "decision to wait" is not evidence that such payments were intended as gifts rather than loans.

Defendant posits "it is unlikely that a custodian would advise a minor in written form" that purchases on the minor's behalf are actually loans rather than gifts. He maintains the payments and purchases were for plaintiff's benefit and not for any of plaintiff's basic needs. Defendant also takes issue with the trial court's credibility determinations, asserting plaintiff's testimony at trial was "inconsistent" and "less than credible."

Plaintiff counters defendant misrepresented the evidence in an attempt to recategorize the gifts as loans. He argues defendant was not waiting to seek

5

reimbursement pending the divorce, as the funds were transferred fourteen months prior to the judgment of divorce. He asserts the transfer was purposely timed due to him turning twenty-one and "had absolutely nothing to do with the divorce." He points out that N.J.S.A. 46:38A-30 requires a custodian to keep records of all transactions with respect to custodial property, and defendant never provided any documentation showing the transactions were loans, or even that such payments were made using defendant's money. He argues it is defendant's responsibility as custodian to track and account each transaction. He also argues defendant could have withdrawn the money each time an expense was incurred and the failure to do so rendered all the payments gifts, not loans. Finally, he contends the transfer out of his UTMA account cannot be considered a reimbursement as the money was transferred into Eric's UTMA account.

Our scope of review of the trial court's findings of fact is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Deference is particularly appropriate when the evidence at trial is largely testimonial because the trial judge had the opportunity to hear, see, and observe the witnesses. Id. at 412. Therefore, an appellate court will not disturb the factual findings of a trial court "unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests

6

of justice." Rova Farms Resort, Inc. v. Inv. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). A trial court's interpretation of the law, however, is entitled to no special deference. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The UTMA allows for the "transfer by irrevocable gift to . . . a custodian for the benefit of a minor." N.J.S.A. 46:38A-8. Any transfer so made "is irrevocable, and the custodial property is indefeasibly vested in the minor." N.J.S.A. 46:38A-24.

Once the gifted property is delivered, "acting in a custodial capacity, [the custodian] has all the rights, powers, and authority over custodial property that unmarried adult owners have over their own property." N.J.S.A. 46:38A-31. The custodian has the responsibility to "[c]ollect, hold, manage, invest, and reinvest custodial property." N.J.S.A. 46:38A-26. However, custodial property must be kept at all times "separate and distinct from all other property in a manner sufficient to identify it clearly as custodial property of the minor." N.J.S.A. 46:38A-29. Furthermore, N.J.S.A. 46:38A-30 requires a custodian to "keep records of all transactions with respect to custodial property" and make

7

such records "available for inspection . . . by the minor if the minor" has reached the age of fourteen.

Although the UTMA invests the custodian with discretion to "pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor," N.J.S.A. 46:38A-32, such a payment or expenditure "is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor," N.J.S.A. 46:38A-34; see also Colca v. Anson, 413 N.J. Super. 405, 416 (App. Div. 2010) ("A child's assets may not be used to fulfill a financially able parent's support obligation."); Cohen v. Cohen, 258 N.J. Super. 24, 30-31 (App. Div. 1992) ("[A] custodian who is also a parent cannot properly use assets of a U[T]MA account to defray the parent's legal obligations to a child if the parent is financially able to support the child."). Unless the terms of the gift expressly state otherwise, the custodian must "transfer the custodial property to the minor or to the minor's estate upon the earlier of" (1) "[t]he minor's attainment of [twenty-one] years of age"; or (2) "[t]he minor's death." N.J.S.A. 46:38A-52(a), (c).

"A custodian is entitled to reimbursement from custodial property," but only "for reasonable expenses incurred in the performance of the custodian's

A-0718-23

duties." N.J.S.A. 46:38A-35. A custodian also "has a noncumulative election during each calendar year to charge reasonable compensation for services performed during that year." N.J.S.A. 46:38A-36.

In the context of a transfer of property from a parent to a child, our Supreme Court has delineated "the elements of a valid inter vivos gift and the nature and measure of the proof required to rebut the presumption of such a gift." Bhagat v. Bhagat, 217 N.J. 22, 40 (2014). Those three elements are: (1)"actual or constructive delivery;" (2) "donative intent;" and (3) "acceptance." Ibid. Typically "[t]he burden of proving an inter vivos gift is on the party who asserts the claim." Id. at 41. However, when "the transfer is from a parent to a child, the initial burden of proof on the party claiming a gift is slight. . . . In such cases a presumption arises that the transfer is a gift." Ibid. This is because "a child is considered a natural object of the bounty of the donor." Id. at 42. Yet, this presumption can be overcome by clear and convincing evidence of a contrary intent. Id. at 46-47.

Thus, "the proofs advanced to rebut the presumption of a gift 'must be of facts antecedent to or contemporaneous with the purchase, or so immediately afterwards as to form a part of the res gestae.'" Id. at 43 (quoting Herbet v.

Alvord, 75 N.J. Eq. 428, 429-30 (Ch. 1909)).  The Court in <u>Bhagat</u> summarized the above principles, stating:

> [A] person who has transferred property to another, which raises a presumption that the transferred property was a gift, must meet the clear and convincing evidence standard  of proof to rebut the presumption. . . .  [T]he person seeking to rebut the presumption is limited to evidence antecedent to, contemporaneous with, or immediately following the transfer. In addition, a party seeking to rebut the presumption may also adduce proof of statements by the parties concerning the purpose and effect of the transfer.
>
> [<u>Id.</u> at 47.]

The Court in <u>Bhagat</u> found this court "properly refused to consider . . . the evidence offered" by the parent "of statements" he made "years after the . . . transfers" to the child, as "[t]hose statements [we]re neither antecedent to, contemporaneous with, or immediately following the transaction and thus fail[ed] to provide reliable evidence of the intent of the . . . transfers."  <u>Id.</u> at 48.

Here, defendant never supplied any "records of [any] transactions with respect to custodial property" which established the purchases or payments were meant as loans as opposed to gifts.  N.J.S.A. 46:38A-30.  Rather, defendant only points to his testimony at trial to indicate such purchases were intended as loans, and questions the court's credibility determinations.

Although N.J.S.A. 46:38A-32 permits the custodian to "expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor," the trial court determined defendant's expenditures on behalf of plaintiff were gifts. Like the parent in Bhagat, defendant offers proof "neither antecedent to, contemporaneous with, or immediately following the [purchases] and thus fail[s] to provide reliable evidence of [his] intent" to categorize the payments as loans, rather than gifts. 217 N.J. at 48. Instead, defendant relies on his trial testimony to assert that years after the purchases were made, he was unaware the UTMA account was not subject to equitable distribution in the divorce proceedings, and questions the court's credibility findings.

We are unconvinced the trial court's factual findings were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms, 65 N.J. at 484 (quoting Fagliarone, 78 N.J. Super. at 155). Rather, we conclude there was ample evidence in the record to support the trial court's findings, and we discern no basis to disturb the court's order for judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0718-23